**In re GRAND JURY MATTER.**

**Appeal of James Gilbert BROWN.**

**No. 84–1475.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 10, 1984.

Reargued In Banc May 6, 1985.

Decided July 23, 1985.

As Amended July 29, 1985.

Stephen Robert Lacheen, (argued), David E. Shapiro, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Robert E. Welsh, Jr., Asst. U.S. Atty. (argued), Philadelphia, Pa., for appellee.

Before GIBBONS and GARTH, Circuit Judges, and TEITELBAUM, District Judge.*

Before ALDISERT, Chief Judge, and SEITZ, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER, BECKER and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

James Gilbert Brown appeals from an order adjudging him to be in civil contempt of court for refusing to obey an order enforcing a subpoena *duces tecum.* The subpoena *duces tecum* sought the production, before a grand jury, of corporate records of J. Gilbert Brown Co., P.C. In resisting the enforcement of the subpoena *duces tecum,* Brown asserted that his authenticating testimony with respect to those records would violate his privilege against self-incrimination. The district court held that because the records belonged to a corporation, Brown had no privilege against self-incrimination, either with respect to the contents of the records, or with respect to their authentication before

---

* Honorable Hubert I. Teitelbaum, Chief Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

the grand jury. On appeal Brown does not contend that his privilege against self-incrimination applies to the contents of the records. He contends, rather, that having made a non-frivolous claim that authentication of the records would incriminate him, he could not be held in contempt absent findings by the district court that the fact of his possession of the records was not of evidentiary significance, and that his production of them would not be used for evidentiary purposes. We agree, and thus we reverse.

The issue presented by this appeal is a narrow one. We must decide whether a person, simply by virtue of his status as a custodian of a corporation's records, can be compelled to make self-incriminating disclosures that are testimonial, *i.e.*, communicative or assertive in nature. The subpoena *duces tecum* addressed to Brown seeks the records of J. Gilbert Brown Co., P.C., an incorporated accounting firm wholly owned by Brown. Brown makes no claim that because he is the sole owner of this professional corporation, it or he can claim any privilege against self-incrimination with respect to the contents of the records. The government acknowledges that the grand jury could obtain the records by means other than a subpoena *duces tecum* addressed to Brown. Thus, what is in issue is solely the question whether Brown may be compelled by a subpoena to give testimony before the grand jury, verbally or by a non-verbal communicative act, authenticating those records. The government urges (1) that he may be so compelled, and (2) that if such compelled authentication testimony is elicited before the grand jury, it may be used against Brown, to the extent relevant, in the trial of any indictment which might be returned against him. *See* Fed.R.Evid. 801(d). The district court agreed with the government, and held Brown in contempt for refusing to give

authentication testimony even though he is concededly a target of the grand jury investigation, and even though he had offered to submit the records to the grand jury through his attorney.[1] The possibility that the authentication testimony might tend to incriminate Brown was, in the trial court's view, irrelevant.

In *United States v. Austin-Bagley Corp.*, 31 F.2d 229, 233–34 (2d Cir.), *cert. denied*, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929) the Court of Appeals for the Second Circuit held that communicative or assertive testimony with respect to corporate records could be compelled, even though it resulted in self-incrimination. The *Austin-Bagley* exception to the privilege against self-incrimination has never been adopted by this court or the Supreme Court. Such an exception is, moreover, inconsistent with the Supreme Court's recent treatment of the privilege.

The Supreme Court's modern treatment of the privilege against self-incrimination commences with Justice Brennan's opinion in *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966), in which, in contrast with earlier cases such as *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Court focused upon the distinction between evidence of acts which are noncommunicative, and evidence of acts which, by their nature, require the direct manifestations of an individual's thoughts. *Schmerber v. California* recognized that compelled production of blood samples did not require disclosure of the mental process of the person from whom the sample was taken. *Schmerber*, 384 U.S. at 765, 86 S.Ct. at 1832. The Court has applied the same principle to permit a defendant's compelled participation in a lineup, *United States v. Wade*, 388 U.S. 218, 221–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967), and the compelled production of handwrit-

**1.** The dissent's doubt, expressed in footnote 3, that such an offer was, in fact, made by Brown's counsel is surprising in view of the statements made by the parties during oral argument before all the members of this court. In the course of his argument, Brown's attorney repre-

sented that the proffer had been made and was refused. Later, in response to a direct question from the court, the government, through Mr. Welsh, confirmed that Brown had offered to produce the records through his counsel, and that the offer had been rejected.

ing samples, *Gilbert v. California*, 388 U.S. 263, 265–67, 87 S.Ct. 1951, 1952–53, 18 L.Ed.2d 1178 (1967), and voice exemplars, *United States v. Dionisio*, 410 U.S. 1, 5–7, 93 S.Ct. 764, 767–68, 35 L.Ed.2d 67 (1973). In each case the Court noted that the evidence obtained was devoid of testimonial significance. Once the Court recognized that the privilege against self-incrimination was concerned only with the compelled disclosure of thought processes, it was inevitable that earlier holdings such as *Boyd v. United States, supra*, 116 U.S. 616, 6 S.Ct. at 524, applying the privilege to the contents of records which were voluntarily created, would be reconsidered. That reconsideration occurred in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), holding that the compelled production from attorneys of documents which had been prepared either by their clients or for their clients by accountants did not implicate the clients' privilege against self-incrimination. As the Court explained,

> [T]he Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating.

*Id.* at 408, 96 S.Ct. at 1579 (emphasis in original).

Although *Fisher v. United States* put an end to the successful assertion of the privilege against self-incrimination with respect to the contents of business documents voluntarily created, the quoted passage makes clear that the Court continued to recognize that testimonial communication of any kind was protected if it might tend to incriminate. Indeed, long before the Court cut back on the privacy interests in the contents of records which it recognized in *Boyd*, it had determined that custodians of business records were protected from compelled incriminating testimony. In *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), the government, relying on *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), urged that the custodian of a labor union's books and records could be compelled to testify before a grand jury about their location. A unanimous Court flatly rejected that contention, reasoning:

> The Fifth Amendment suggests no such exception. It guarantees that "No person ... shall be compelled in any criminal case to be a witness against himself ...." A custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is custodian in response to a rightful exercise of the State's visitorial powers. But he cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony.

*Curcio*, 354 U.S. at 123–24, 77 S.Ct. at 1149. Justice Burton's opinion in *Curcio v. United States* distinguishes the Second Circuit opinion in *United States v. Austin-Bagley Corp., supra*, and contains dicta to the effect that mere authentication testimony may be compelled. 354 U.S. at 125, 77 S.Ct. at 1150. That dicta, however, is inconsistent with the reasoning and holding of *Curcio*, for Justice Burton holds unequivocally that "forcing the custodian to testify orally as to the whereabouts of nonproduced records requires him to disclose the contents of his own mind." *Id.* at 128, 77 S.Ct. at 1151. By focusing on the fact that the testimony for which compulsion was sought would require a custodian of records to reveal the contents of his mind, *Curcio* anticipated the reasoning of the *Schmerber* line of cases. The dicta in *Curcio* arguably approving the *Austin-Bagley* rule simply cannot be squared with such a focus of inquiry, and furthermore, are inconsistent with the Court's reasoning in *Fisher* and in the more recent case of *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984).

In *Fisher* the Court specifically referred to the communicative nature of production:

> The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoe-

na tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States,* 354 U.S. 118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225] (1957).

425 U.S. at 410, 96 S.Ct. at 1581. Thus in *Fisher* the Court cited with approval the holding in *Curcio* that a record custodian could not be compelled to give evidence of a communicative nature which might incriminate him. The Court went on to examine the papers in issue, prepared by someone other than the custodian, and determined that as a matter of law admitting the existence and possession of the papers would not tend to incriminate. 425 U.S. at 411, 96 S.Ct. at 1581. The *Fisher* Court, therefore, did what the trial court in this case refused to do, and what the *Austin-Bagley* Court held to be irrelevant. It made a determination that the production of the requested evidence would not tend to incriminate the subpoenaed witness.

More recently, in *United States v. Doe,* 465 U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), that critical determination was made, in the first instance, by the district court which found that the act of producing the subpoenaed documents would be communicative and incriminatory. The Supreme Court affirmed the holding of this court that the production of the documents in question was privileged, and could not be compelled absent a grant of use immunity pursuant to 18 U.S.C. §§ 6002 and 6003. *Doe,* 465 U.S. at ——, 104 S.Ct. at 1245. The Court stated that

[a]lthough the contents of a document may not be privileged, the act of producing the document may be. [*Fisher v.*

United States, supra ] at 410, 96 S.Ct. at 1581. A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect.

*Id.* at ——, 104 S.Ct. at 1242.

The government urges that the holding in *United States v. Doe* does not control because in *Doe* the records were those of a sole proprietorship, while in this case they belong to a professional corporation. That argument misses the whole point of the Court's analysis in *Fisher* and *Doe.*[2] Those cases, consistent with *Schmerber v. California,* make the significant factor, for the privilege against self-incrimination, neither the nature of the entity which owns documents, nor the contents of documents, but rather the communicative or noncommunicative nature of the arguably incriminating disclosures sought to be compelled.

■ Our holding that a witness may not be held in contempt for refusing to authenticate records absent either a finding that there is no likelihood of self-incrimination or a grant of use immunity casts no doubt on the continued vitality of the rules of *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) and *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), that neither corporations nor other collective entities may assert a privilege against self-incrimination. Nor does it weaken in the slightest the utility of the compulsory record rule discussed in *Marchetti v. United States,* 390 U.S. 39, 57, 88 S.Ct. 697, 707, 19 L.Ed.2d 889 (1968). Records of collective entities still must be maintained, and their production can be compelled by a subpoena *duces tecum* addressed to the entity. In situations where authentication is required,[3] Fed.R.Evid.

---

**2.** The government places great reliance on *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), but *Bellis* stands only for the proposition that the custodian of a collective entity's documents has no fifth amendment privilege with respect to the incriminating contents of those documents. Bellis did not urge, and the Court did not consider, the often communicative and incriminatory nature of the act of production. *See* Brief for Petitioner, *Bellis v.*

United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). Thus, the holdings in *Fisher* and *Doe* render untenable any suggestion that *Bellis* would require a custodian to produce documents where the act of production is both communicative and incriminatory.

**3.** A grand jury proceeding is, of course, not such a situation, since the Federal Rules of Evidence do not apply. Fed.R.Evid. 1101(d)(2). *See Cos-*

901(a) indicates that the requirement can be satisfied by the submission of "sufficient evidence to support a finding that the matter in question is what its proponent claims." *Id.* *See* Fed.R.Evid. 104(b). This is particularly true in the case of business records which, more often than not, can be authenticated without resort to extrinsic evidence. *In re Japanese Electronic Products,* 723 F.2d 238, 284, 288 (3d Cir. 1983), *cert. granted in part sub nom. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* —— U.S. ——, 105 S.Ct. 1863, 85 L.Ed.2d 157 (1985). Where a witness is required to authenticate records, most business entities will have agents who can provide the testimony without self-incrimination.[4] The grant of use immunity pursuant to 18 U.S.C. §§ 6002 and 6003 is always a possibility. The dissent's raising the spectre of two corporations avoiding prosecution for price fixing by virtue of a "de facto" corporate privilege is, thus, unrealistic in suggesting that the actual participants in a corporate conspiracy would be the only persons within the organization capable of authenticating the hypothetical document. Further, the dissent is notably silent on the possibility of the grant of use immunity in this scenario.

In the present case the government never explored alternate means of production or authentication of the documents, and it never considered the possibility of a grant of use immunity before moving to have Brown held in contempt. Indeed, it candidly concedes that what it wants amounts to compelled authentication testimony which may later be used against a target of the grand jury investigation. Such a result would be a convenience to prosecutors, but the Court rejected essentially the same argument for efficiency in prosecutions in *Curcio v. United States,* 354 U.S. at 127, 77 S.Ct. at 1151. We have no doubt that the repeal of the privilege against self-incrimination by a constitutional amendment

would even be a greater convenience to prosecutors, but until that occurs prosecutors must live with the rule that no person, even the sole stockholder of a professional corporation, may be compelled to disclose the contents of his mind when such disclosure may tend to provide an incriminating link in an evidentiary chain for use against him.

Since the court gave Brown no opportunity to establish that production and authentication would tend to incriminate him, and no offer of statutory use immunity was made, the order holding Brown in civil contempt must be reversed. Whether the act of production, or testimony authenticating the records of J. Gilbert Brown Co., P.C., would in fact tend to incriminate Brown is a matter which must be determined by the trial court if the government makes a further effort to enforce the subpoena *duces tecum.*

The judgment appealed from will, therefore, be reversed.

BECKER, Circuit Judge, concurring, with whom ADAMS, Circuit Judge, joins.

Although I agree with much of the reasoning of Judge Garth's dissent, I agree with the result reached by Judge Gibbons that the judgment of the district court holding Brown in contempt of court must be reversed; hence this separate opinion.

Judge Gibbons is apparently of the view that the Supreme Court does not treat custodians of corporate records differently from other record-keepers for fifth amendment purposes. He posits that the Court holds corporate custodians to be protected by the fifth amendment with respect to testimony regarding corporate documents, whether such testimony is verbal or results from the act of production itself. *See supra* at 527–529. According to Judge Gibbons, cases suggesting the contrary, such as *Bellis v. United States,* 417 U.S.

*tello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1965).

4. The government did not in this case request the court to direct that the corporation appoint such an agent. *See Rogers Transp. Inc. v. Stern,* 763 F.2d 165 (3d Cir.1985) (en banc).

85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), address only the question whether the documents themselves were privileged, and not whether the act of production by the custodian would constitute testimonial self-incrimination. *See supra* at 530 n. 1.

I disagree with this interpretation of the relevant case law. Rather, I agree with Judge Garth, *see infra* at 532 (Garth, J. dissenting), that the Court continues to make a distinction between custodians of collective entity records and other record-keepers. While non-collective entity custodians can claim a fifth amendment privilege with respect to both oral testimony and the act of production, *see United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 1241–43, 79 L.Ed.2d 552 (1984), collective entity custodians can claim a blanket privilege only regarding oral testimony.[1] *See Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957). To the extent that mere production of the documents in compliance with a subpoena would result in an implicit admission that they are authentic corporate documents under the control of the custodian, however, the cases make clear that the custodian is not protected by the fifth amendment. *See, e.g., United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944); *Wilson v. United States*, 221 U.S.

361, 378–79, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911). The rationale behind this distinction is that the custodian should not be able to shield the collective entity, which has no fifth amendment privilege, from governmental scrutiny by asserting a personal right. Thus, the custodian is deemed to have waived his privilege with respect to any testimonial incrimination inherent in the act of production by acceptance of his corporate position. *See United States v. White*, 322 U.S. at 700, 64 S.Ct. at 1251.

As recently as *Fisher v. United States*, the Court reaffirmed the difference in fifth amendment treatment as between corporate and other record-keepers. The Court stated that a collective-entity custodian must comply with a subpoena *duces tecum* even though he has been responsible for keeping the books and his producing them would itself be sufficient authentication to permit their introduction against him.[2] Nothing in *United States v. Doe*, which addressed the question whether a sole-proprietor can claim the fifth amendment with respect to the production of business documents, and which is an application of *Fisher*, can be taken to have eradicated the historic line drawn in fifth amendment jurisprudence between record-keepers of collective and non-collective entities.[3]

---

**1.** I note in this regard my belief that any intimation in Judge Gibbons' opinion that this case involves the question whether Brown may be compelled by a subpoena to give oral testimony before the grand jury, *see supra* at 526, is inaccurate. Rather, in my view, the key issue is whether Brown personally may be forced to produce those documents in light of his claim that the very act of production would, given the wording of the subpoena, compel him to "testify" that the documents are in his possession and were prepared by him or under his supervision. *See infra* at 531.

**2.** In pertinent part, the Supreme Court stated: Moreover, in *Wilson v. United States, supra; Dreier v. United States, supra* [221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911)]; *United States v. White, supra; Bellis v. United States, supra;* and *In re Harris, supra* the custodian of corporate, union, or partnership books or those of a bankrupt business was ordered to respond to a subpoena for the business' books even though doing so involved a 'representation that the documents produced are those demanded by

the subpoena,' *Curcio v. United States*, 354 U.S., at 125, 77 S.Ct., at 1150, 1 L.Ed.2d, at 1231.[14]

---

[14] In these cases compliance with the subpoena is required even though the books have been kept by the person subpoenaed and his producing them would itself be sufficient authentication to permit their introduction against him.

*Fisher*, 425 U.S. at 412 n. 14, 96 S.Ct. at 1582 n. 14.

**3.** I recognize that *Fisher* and *Doe* have changed the fifth amendment landscape by refocusing the inquiry on the act of production and not on the nature of the documents at issue. The pre-*Fisher* cases distinguished between corporate documents, which were afforded no fifth amendment protection, and other business records, which were held to be protected by the fifth amendment. In *Fisher* and *Doe*, however, the Court held that voluntarily prepared business records *of any kind* are not entitled to fifth amendment protection, and that only the act of

Were this a "mere production" case, in which the only potential incrimination to Brown from the production of the corporate documents was that which is inherent in the production itself—i.e., an acknowledgment that the documents exist, that the custodian has control over them, and that they are authentic corporate documents—I would agree with the result reached by Judge Garth. In my view, however, the case involves testimonial incrimination beyond that inherent in the act of production because of the wording of the grand jury subpoena. It is for this reason that I concur in the result reached by Judge Gibbons.

The specific terms of the grand jury subpoena, in pertinent part, are as follows:

> To: James Gilbert Brown, Custodian of Records J. Gilbert Brown Co., P.C.
>
> You are hereby commanded to appear in the United States District Court for the Eastern District of Pennsylvania at Federal Grand Jury Room ... and bring with you all workpapers, reports, records, correspondence and copies of tax returns in your possession or under your control *relating to accounting services performed by you or under your supervision* on behalf of the below-listed persons or entities for the years 1977 through 1982.

(Emphasis added.) As I read this subpoena, its request for production constitutes, in effect, an interrogatory that asks Brown, "Did you prepare the documents?" Production of documents pursuant to the subpoena would consequently convey implied and probably incriminatory testimony by Brown that he had prepared, or had supervised the preparation of, the documents produced.[4] Brown's compliance with the subpoena, therefore, would potentially result in substantially more incriminating testimony than that necessarily resulting from the production of corporate documents. Moreover, I cannot say with confidence that a trial court would hold inadmissible against Brown any such implied testimony.[5] Thus, the document request goes far beyond what *Fisher* permits and crosses the line into an area protected by the fifth amendment.[6]

I therefore believe that Brown's claim of privilege may have properly been invoked; hence, the contempt sanction should be vacated. If the government makes a further effort to enforce the subpoena *duces tecum*, then the district court would have to determine whether production of the documents would in fact incriminate Brown.[7] I also believe that if the government were to narrow the subpoena by eliminating its impermissible interrogatory character, it

---

producing the documents might be privileged. *See Doe,* 104 S.Ct. at 1241–42; *Fisher,* 425 U.S. at 409–410, 96 S.Ct. at 1580. Thus, one basis for the pre-*Fisher* distinction between corporate and other records-keepers—that only the latter were keepers of records with fifth amendment protection—was eroded by these later cases. Nevertheless, the other rationale for treating corporate custodians differently, the concern that otherwise they could protect the corporation itself from disclosure, survives the *Fisher* and *Doe* decisions. While these cases may in fact herald an end to the distinction between corporate and non-corporate custodians, the Supreme Court has yet to take such a step and it is not for this Court to do so.

**4.** I thus disagree with Judge Garth, at 535, that Brown was never asked the "critical question" about preparation merely because he refused to produce the documents.

**5.** The mechanism of admissibility would, I presume, be similar to what is involved when production is deemed sufficient to establish authen-

tication. *See Fisher,* 425 U.S. at 412 n. 12, 96 S.Ct. at 1582 n. 12. The production would constitute a non-verbal assertive act of a party defendant which is non-hearsay under Fed.R.Evid. 801. *See* Fed.R.Evid. 801(a)(2) & (d)(2)(A).

**6.** Brown represents in his supplemental brief that there are other employees of the corporation who may have been able to produce the documents but that the government insisted on production and authentication of the documents by Brown himself. While these representations do not affirmatively appear of record, they are made by responsible counsel and have not been controverted by the government; if true, they corroborate Brown's position by suggesting that it is the government's strategy to make testimonial use of production by Brown.

**7.** Presumably the focal point of the inquiry would be the import of his having prepared the returns in question.

could obtain the records without difficulty for the reasons explained by Judge Garth in his dissent.

GARTH, Circuit Judge, dissenting, with whom SEITZ and JAMES HUNTER, III, Circuit Judges, join:

Gilbert J. Brown, the appellant, is an accountant who has incorporated his practice as a one-man professional corporation. The books and records of his corporation were subpoenaed by the grand jury. Brown refused to produce them and has claimed his fifth amendment privilege, asserting that he would incriminate himself if he was required to produce and thereby authenticate the corporate records sought by the grand jury. The district court, finding Brown's refusal to produce the records to be meritless because Brown was the representative of the corporation, held Brown in contempt.

## I.

In this case, the majority opinion holds that a corporate representative obliged to produce corporate records subpoenaed by the government may assert his personal fifth amendment privilege against self-incrimination. The majority opinion so holds in the face of nearly eighty years of unvarying and continuous Supreme Court precedent to the contrary. As most recently stated in the words of Justice Marshall in *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974):

(A) ... long line of cases has established that an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally.

This principle was established for corporate records, including records of a one-man corporation, in the early part of this century. See, e.g., *Grant v. United States*, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913) (sole shareholder of corporation subject to subpoena); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). Rather than create an exception to the corporate records rule for professional corporations, if indeed such an exception can be justified in light of Supreme Court precedent and reasoning, the majority opinion virtually ignores the corporate records rule, implicitly relying on the recent *United States v. Fisher*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) cases as having overruled *Bellis sub silentio*.

Yet this is not the case. Neither *Fisher* nor *Doe* dealt with corporate records. Neither *Fisher* nor *Doe* has sapped the vitality of *Bellis*. Thus, the real issue in this case, which the majority fails to address, is whether production of the records of a one-man professional corporation is to be treated as production by a sole proprietor—the sort of production involved in *Doe* —or is to be treated as production by a representative of a collective, corporate entity—the sort of production involved in *Wilson* and *Grant*. Stated differently, the question is whether the fifth amendment privilege is available when a professional one man corporation is subpoenaed to produce records and the production of these records may incriminate the "one man." This is the one issue to which the Supreme Court has yet to speak, and it is the one issue which has led to conflicting determinations in other federal courts. See *In Re Grand Jury Proceedings, Morganstern*, 747 F.2d 1098 (6th Cir.1984), vacated and listed in banc, 760 F.2d 670 (6th Cir.1985); *Butcher v. Bailey*, 753 F.2d 465, 471 n. 9 (6th Cir. 1985); *In Re Grand Jury Subpoena Duces Tecum (Doe)*, 605 F.Supp. 174 (E.D.N.Y. 1985).

By treating this as a compelled *testimony* case rather than a compelled corporate document *production* case, the majority has decided a case not before us.[1] It is for these reasons that I respectfully dissent.

---

**1.** In effect it has erected a straw man and then struck it down. See *Kobell v. Suburban Lines,*

*Inc.,* 731 F.2d 1076, 1100 (3d Cir.1984).

## II.

Significantly, in deciding this case, the majority opinion makes no specific reference to the subpoena that was issued to J. Gilbert Brown, to the proceedings before the Grand Jury, nor to the form of contempt citation issued by the district court. Since reference to the subpoena and the grand jury proceedings is essential to frame the true issue in this case, I set them forth below.

The subpoena issued to Brown provided that:

To: James Gilbert Brown, Custodian of Records J. Gilbert Brown Co., P.C.

You are hereby commanded to appear in the United States District Court for the Eastern District of Pennsylvania at Federal Grand Jury Room 4322, U.S. Courthouse, 601 Market Street, in the city of Philadelphia on the 7th day of March 1984 at 11:00 o'clock A.M. to testify before the Grand Jury and bring with you all workpapers, reports, records, correspondence and copies of tax returns in your possession or under your control relating to accounting services performed by you or under your supervision on behalf of the below-listed persons or entities for the years 1977 through 1982:

Jack Rothman, d/b/a Penn Builders

The list of persons or entities for whom returns were prepared by employees of the corporation during 1979, 1980 and 1981, maintained pursuant to 26 U.S.C. § 6107(b).

Brown did appear before the Grand Jury upon the appointed date. At this time Brown did not produce the requested corporate documents. The entire colloquy between Brown and Assistant United States Attorney Welsh appears as follows:

BY MR. WELSH:

Q. Sir, would you please state your name?

A. James G. Brown.

Q. Now, Mr. Brown, you are before a Federal Grand Jury conducting an investigation of violations of Title 18, United States Code, Section 1001 which deals with the alleged submissions of false statements or documents during Internal Revenue audits.

A. No.

Q. I want to advise you of certain matters that all witnesses are entitled to.

Number one, you are entitled to be advised by a lawyer as to any question that the Grand Jury or I may ask you and you may consult with a lawyer at any time. Do you understand that?

A. Yes.

Q. And to your knowledge David Shapiro, your attorney, is outside that door?

A. Yes.

Q. If at any time that I ask you or if a Grand Juror ask you something that you like to ask your lawyer, feel free to discuss it. Some witnesses under circumstances have the right to evoke (sic) the fifth amendment if an answer to a question might tend to incriminate you. Do you understand that right?

A. Yes.

Q. Is it correct that you are the president and/or owner of James Gilbert Brown Professional Corporation?

A. I was.

Q. And are you no longer?

A. That's correct.

Q. That was a professional corporation?

A. Yes.

Q. Do you recall being subpoenaed or having a subpoena served on you through your lawyer calling for records pertaining to Jack Rothman doing business as Penn Builders?

A. Can I consult with my attorney?

(Whereupon, the witness is consulting with his attorney.)

.     .     .     .     .

Q. Mr. Brown, I'm going to hand you what I marked as G.J.B, for Brown one, which is a subpoena calling for certain records concerning Jack Rothman doing business as Penn Builders; is it correct

that you have been served with that through your lawyer?

A.  Yes.

Q.  And have you brought with you to-day the records called for in that subpoena?

A.  On the advice of counsel and for reasoning set forth, I hereby evoke (sic) the fifth amendment to the constitution and refuse to answer your question.

Q.  And isn't it correct that you will make the same response to any other questions that I ask concerning the production of those records?

A.  Yes.

At that point, Brown was excused and the proceedings were adjourned. The district court held a contempt hearing, and Brown was cited for contempt because "the witness has failed and refused to comply with the order of the Court *to provide the subpoenaed documents* before the grand jury." Contempt and Bail Order of August 15, 1984 (emphasis added).

Thus, two facts immediately emerge from this record: 1) Brown was never asked to testify in identification or authentication of the subpoenaed records; and 2) Brown was cited for contempt not because he refused to testify in response to any question but he refused to *produce* the documents to which the subpoena was addressed.

### III.

According to the majority's view of the issue in this case, "[w]e must decide whether a person, simply by virtue of his status as a custodian of a corporation's records, can be compelled to make self-incriminating disclosures that are testimonial, *i.e.*, communicative or assertive in nature." Maj op., at 526. The majority then reasons that *Fisher v. United States, supra,* put an end to any distinction between public and private documents for the purpose of fifth amendment protection concerning the contents of the documents. According to the majority, the *Fisher* holding, that the contents of voluntarily created records are always unprotected, vitiates the reasoning underlying the collective-entity doctrine, first announced by the Supreme Court nearly eightly years ago in *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) and *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). These cases held that the custodian of corporate records may not rely on his personal privilege to resist production of corporate documents. The majority also reasons that the case of *United States v. Doe, supra,* which held that the compelled production of documents, without testimony, may be a form of compelled self-incrimination protected by the fifth amendment, abolishes any distinction between testimony and production and thereby abolishes the collective-entity doctrine; a doctrine which only permits compelled *production* of documents as an exception to the fifth amendment privilege.

Thus, the majority's decision rests on three premises. First, the majority assumes that what was called for in this case was authentication *testimony.* Second, the majority assumes that the collective-entity doctrine depends on the distinction, since abandoned, between public documents and private documents. Third, the majority assumes that the recognition in *Doe,* that the act of production may itself be incriminatory, overrules the unbroken line of collective-entity cases which bar the assertion, by a corporate custodian, of personal privilege to resist production of corporate documents. I suggest that each of these premises is flawed.

### IV.

The majority opinion's first premise is a result of misreading the record. I have reproduced the essential features of the record in this case in order to demonstrate that this case concerns only *document* production, and not *verbal* testimony. The subpoena was a subpoena *duces tecum* and the contempt citation was issued because Brown refused to produce documents. It was not issued because Brown refused to testify.

Brown argues, for the first time [2] that because the subpoena sought documents "relating to accounting services performed by you or under your supervision," that the subpoena somehow required testimony concerning the identity of the person who performed the accounting services in question. However the record discloses that, Brown was never asked the critical question: "were these the papers prepared by you?" He was not asked that question for the simple reason that he at all times refused to produce the documents. Inclusion of a description of the documents sought can hardly invalidate a subpoena. Brown could easily have produced the documents, and then if asked to testify with respect to them, could have claimed his testimonial privilege.[3] Such an action would have brought this case up in a very different light—indeed, in the light in which the majority has erroneously decided this case.

## V.

A review of the collective-entity doctrine illustrates the fallacies of the majority's remaining two premises supporting its deci-

sion. The collective-entity exception to the fifth amendment privilege against self-incrimination has a long history. It was first announced by the Supreme Court in the case of *Hale v. Henkel,* 201 U.S. 43, 74, 26 S.Ct. 370, 378, 50 L.Ed. 652 (1906): "We are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for an examination at the suit of the State." This exclusion from the privilege was soon extended to bar assertion of the personal privilege by the custodian of corporate documents. *Wilson v. United States, supra.*

*Wilson* so held despite acknowledgment by the Court that the very act of production of the documents might have a testimonial aspect which would personally incriminate the custodian of the documents. *See* 221 U.S. at 378–79, 31 S.Ct. at 543. The *Wilson* holding has been applied to records of a one-man corporation. *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913).[4] This corporate excep-

**2.** This argument was not presented to the district court, and thus has not been preserved for our review. Neither the grand jury record, reproduced above, nor the district court record reveals that Brown would have produced the subpoenaed records no matter how they were identified. It is the district court record which necessarily governs our review here.

**3.** The majority relies on a purported offer by Brown to produce the documents through his attorney. No such unconditional offer appears in the record before the district court. That record, of course, controls our review here. Moreover, even assuming an unconditional offer was made by Brown to have his attorney produce the subpoenaed records, nothing in the record before us reveals whether Brown would then have claimed that production of the records by his attorney—an act which necessarily would have required Brown to furnish the subpoenaed documents to his attorney—would incriminate Brown and thus come within *Brown's* fifth amendment privilege. Indeed, that very argument was made in *Rogers Transportation, Inc. v. Stern,* 763 F.2d 165 (3d Cir. 1985) (en banc), which was heard *en banc* on the same day as the instant appeal. There the issue was framed as: whether a fifth amendment privilege is available to a one-man corporation when an agent (attorney) of that corpora-

tion produces the corporation's records. The answer to that question has yet to be supplied by this court.

In *Rogers,* the *en banc* court did no more than remand the action to the district court for further proceedings in light of certain representations made by the government at oral argument that use immunity had been granted to two other corporate employees, who might thereafter produce the corporate documents. We thus did not decide whether any fifth amendment privilege would be violated by requiring a one-man corporation to produce corporate documents by means of an appointed agent—here his attorney. That particular issue remains open and unresolved, despite any intimation to the contrary in the majority's opinion. *See* maj. op., at 531, n. 4.

**4.** In *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913) the party subpoenaed to produce the documents was not himself, as in this case, the sole shareholder of the corporation. Nevertheless, *Grant* establishes that no corporation, not even a one-man corporation, may assert the fifth amendment privilege on its own behalf. I recognize that *Grant* was decided long before professional corporations were authorized or gained currency. Nevertheless, *Grant* has yet to be overruled, and indeed has

tion has been extended to bar the assertion of a personal fifth amendment privilege by representatives of other collective entities, including labor unions, *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), and partnerships, *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

The *Bellis* case both confirmed and restated the bar against assertion of the fifth amendment privilege by representatives of collective entities. The Supreme Court reasoned that in order to prevent the collective entity from gaining a de facto privilege, representatives of such entities must not be allowed to assert their own personal fifth amendment privilege since assertion of the personal privilege would effectively immunize the collective entity from subpoena. As the *Bellis* Court wrote, referring to the *White* decision which included labor unions in the exception:

> Since no artificial organization may utilize the personal privilege against compulsory self-incrimination, the Court found that it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege. In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations.

417 U.S. at 94, 94 S.Ct. at 2186. The upshot of these cases, from *Hale v. Henkel, supra,* to *Bellis v. United States,* is not only that corporate records are themselves exempt from the privilege, but that no corporate representative may assert his personal privilege when required to produce or authenticate corporate documents. People have a fifth amendment privilege; corporate documents and corporations do not. This principle obtains whether the subpoena is directed at the corporation, or directed at the corporate representative.

The bar against assertion of the personal privilege by corporate representatives does not result from the fact that we fail to recognize that the act of production may personally incriminate the corporate representative. Rather the doctrine comes into play because we realize that, were the personal privilege to apply, a corporation could avoid production of evidence of its criminal activity so long as the act of production would also incriminate those representatives capable of producing and authenticating the documents.

Thus, if the presidents of two corporations, with the complicity of the boards of directors of both corporations, conspired to fix prices on their 1985 products and kept a memorandum of the agreement, under the majority's holding today such evidence would be immune from a grand jury subpoena. Each officer and director, the only persons capable of producing and authenticating the incriminating memorandum, could show that the act of production would incriminate him personally. Under the majority's holding the fifth amendment privilege would be available to each representative. By allowing the assertion of such a personal privilege, the corporations themselves would gain a de facto privilege against self-incrimination; a result squarely in conflict with *Bellis* and eighty years of prior precedent.

## VI.

Thus, the majority's two legal premises, that the collective-entity doctrine depends on a distinction between "public" and "private" records, and that the collective-entity doctrine relies on the non-recognition of the testimonial aspects of document production, are not supported by Supreme Court

been cited as authoritative as recently as 1974 in *Bellis v. United States,* 417 U.S. 85, 100, 94 S.Ct.

2179, 2189, 40 L.Ed.2d 678 (1974).

precedent. The majority is not on sound ground with its assertion that *Fisher* and *Doe* have overruled *Bellis*.

### A.

First, the majority opinion relies on the *Doe* court's recognition of the testimonial and potentially incriminating aspects of pure document production as undercutting the rationale for the collective-entity doctrine. The majority reads the Supreme Court opinion in *Doe* to establish that, because the production of subpoenaed documents may prove an evidentiary link in the incrimination of the subpoenaed target, production is therefore equivalent to testimony and may not be compelled in the face of a claim of privilege. I agree that *Doe* so holds. The majority, however, goes on to reason that the *Doe* principle is inconsistent with the rationale underlying the collective-entity doctrine and that *Doe* has thus abrogated the doctrine and thus has overruled the cases giving rise to it.

It is here that I part company with those of my colleagues in the majority. I do so because, as I have noted above, the collective-entity doctrine is not based on the theory that the fifth amendment fails to provide protection against compelled document production, but is rather based on the theory that custodians of corporate records may not assert their own personal fifth amendment privilege with respect to the production of corporate documents.

This theory, that the corporate custodian waives his personal fifth amendment rights upon accepting the corporate office, was made explicit in *Wilson*.

> The fundamental ground of decision in this class of cases, is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to criminate

him. In assuming their custody he has accepted the incident obligation to permit inspection.

221 U.S. at 381–82, 31 S.Ct. at 545. Moreover, in *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), the Supreme Court reaffirmed the validity of the collective-entity doctrine even while acknowledging that the very act of production required by the doctrine might have testimonial aspects incriminatory of the custodian who was required to produce the documents. The *Curcio* court recognized that "[t]he books and records of corporations cannot be insulated from reasonable demands of governmental authorities by a claim of personal privilege on the part of their custodian." 354 U.S. at 122, 77 S.Ct. at 1148. The Court went on to recognize that "[a] custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is custodian in response to a rightful exercise of the State's visitorial powers." 354 U.S. at 124, 77 S.Ct. at 1149.

More significantly, the Court reaffirmed the collective-entity exception to the fifth amendment privilege despite explicit recognition that:

> The custodian's act of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself. The custodian is subject to little, if any, further danger of incrimination.

354 U.S. at 118, 77 S.Ct. at 1145. Indeed, this statement goes even further than the issue presented in this case requires us to go: the *Curcio* opinion would allow compulsion of oral testimony by the corporate custodian to identify the corporate documents, an issue that is not before us.[5]

---

**5.** Since this case involves no more than the production of documents by a corporate representative, I need not rely on *United States v. Austin-Bagley Corp.*, 31 F.2d 229 (2d Cir.), cert.

denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929), which the majority takes great pains to reject. It is significant, however, that the *Austin-Bagley* rule decried by the majority finds

The majority refuses to accept this clear statement by the Supreme Court, characterizing it as dicta and in conflict with the Court's actual holding in *Curcio*. However, far from being dicta, this reasoning was essential to *Curcio's* holding. In *Curcio*, the Supreme Court upheld the fifth amendment claim of the custodian of union documents who was no longer in possession of the documents and who had refused to give testimony as to their current whereabouts. Had the Court desired to eliminate the collective-entity doctrine, it could have done so. Instead, the Supreme Court reaffirmed the vitality of the collective-entity doctrine, but limited the fifth amendment exception only to the production of records and authentication testimony—even while recognizing that such production and testimony may be incriminatory.

Much more recently, in *Fisher*, the Supreme Court once again reaffirmed the collective-entity doctrine despite an explicit recognition that production by the custodian was a testimonial act:

> In these cases compliance with the subpoena is required even though the books have been kept by the person subpoenaed and his producing them would itself be sufficient authentication to permit their introduction against him.

425 U.S. at 413 n. 14, 96 S.Ct. at 1582 n. 14.

Thus, *Fisher's* and *Doe's* explicit recognition of what was implicit in *Curcio*—that the act of production may have testimonial aspects—cannot be claimed to repeal the collective-entity doctrine. Rather, the doctrine survives, *not* because production by the custodian has no testimonial ramifications, but because the custodian has waived, to a limited extent, his fifth amendment right upon assuming the duties of his office. *Doe* does not, despite the majority's forecast of *Bellis's* demise, overrule *Bellis*.[6]

If *Doe* meant to overrule *Bellis*, as the majority opinion implies that it does, that fact has yet to be recognized by the Supreme Court. Certainly it would be expected that such a reversal in fifth amendment jurisprudence would have been stated explicitly and not left to speculation.

### B.

Nor does the *Fisher* Court's rejection of fifth amendment protection for the contents of any voluntarily created documents, corporate or individual, abolish the collective-entity doctrine. *Fisher* held that accountant's work sheets in the hands of the taxpayer were not subject to the fifth amendment privilege so long as production of the documents by the taxpayer was not in itself an incriminatory testimonial act. The *Fisher* Court simply affirmed the principle implicit in the *Bellis* line of cases that such documents, whether corporate or individual, enjoy no fifth amendment privilege. In so doing, far from overruling *Bellis*, the *Fisher* Court explicitly reaffirmed the *Bellis* principle that representatives of a collective entity may not assert their personal privilege to avoid production of collective documents. *Fisher*, 425 U.S. at 408, 413 & n. 14, 96 S.Ct. at 1579, 1582 n. 14.

The collective-entity doctrine does not depend upon a distinction between individual and corporate *documents*. It does depend

---

expression in the passage of *Curcio v. United States*, 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957) quoted in text. *Curcio*, while distinguishing *Austin-Bagley*, cites the *Austin Bagley* case with approval.

6. Indeed, the *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) Court indicated that it considered its holding completely consistent with both *United States v. Fisher*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). See *Doe*, —— U.S. at ——, 104 S.Ct. at 1240. *Doe's* two-part holding held first, that voluntarily kept business records of a *sole proprietorship*, like voluntarily kept business records of any other entity, are not themselves protected by the fifth amendment. In the second part of the *Doe* holding, the Court recognized that the act of production of such records by a *sole proprietor not acting in a representative capacity* may itself be incriminatory and testimonial, and thus privileged under the fifth amendment. The "representative" context present before us was not before the *Doe* court. Indeed, the Doe Court referred approvingly to *Bellis* in its opinion, 465 U.S. at ——, 104 S.Ct. at 1240.

upon a distinction between individual and collective *entities*, and requires that since collective entities have no fifth amendment privilege a waiver of that privilege by their representatives must be implied. *Fisher's* holding in no way undercuts this distinction.

### VII.

Since the collective-entity doctrine of *Bellis* survives, the only question remaining is whether it applies in the case of a one-man professional corporation. The reasoning which has led to the "corporate-individual" distinction is equally pertinent in this context. The Supreme Court has stated:

> [T]he corporate form of business activity, with its chartered privileges, raises a distinction when the authority of government demands the examination of books. That demand, expressed in lawful process, confining its requirements within the limits which reason imposes in the circumstances of the case, the corporation has no privilege to refuse. It cannot resist production upon the ground of self-crimination. Although the object of the inquiry may be to detect the abuses it has committed, to discover its violations of law and to inflict punishment by forfeiture of franchises or otherwise, it must submit its books and papers to duly constituted authority when demand is suitably made. This is involved in the reservation of the visitatorial power of the State, and in the authority of the National Government where the corporate activities are in the domain subject to the powers of Congress.

*Wilson v. United States, supra,* 221 U.S. at 382, 31 S.Ct. at 545, cited with approval in *Bellis, supra,* 417 U.S. at 89, 94 S.Ct. at 2183. We have not had called to our attention, either by counsel or by the majority, why this reasoning is any less relevant when the corporation involved is a one-man professional corporation.

In answering the question which I believe this case presents; that is, whether such a corporation should be treated as a sole proprietorship, allowing assertion of the privilege under *Doe,* or whether it should be treated as a corporation, which would bar its representative's assertion of his fifth amendment privilege, we are not without some guidance. The Supreme Court has already spoken to this issue. Not only was a one-man corporation held in *Grant* to be equally lacking in the fifth amendment privilege as any other corporation, but this holding was reaffirmed in *Bellis* in the specific context of incorporated professional practices:

> It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be.... *Every State has now adopted laws permitting incorporation of professional associations, and increasing numbers of lawyers, doctors, and other professionals are choosing to conduct their business affairs in the corporate form rather than the more traditional partnership. Whether corporation or partnership, many of these firms will be independent entities whose financial records are held by the firm in a representative capacity.* In these circumstances, the applicability of the privilege should not turn on an insubstantial difference in the form of the business enterprise.

417 U.S. at 100–01, 94 S.Ct. at 2189 (citations omitted) (emphasis added).

While I recognize that the distinction between a sole proprietorship and a one-man corporation is just as much "an insubstantial difference in the form of the business enterprise" as that between a typical three director close corporation and a partnership, I cannot read the Supreme Court's precedents as authorizing us to obliterate the distinction that eighty years of unyielding case law has established.[7]

---

**7.** The simple answer to the majority's suggestion, Maj. op. at 530–31, that use immunity should have been offered to Brown, is that immunity is only required as a substitute for a

legitimate fifth amendment privilege. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. Frumento,* 552 F.2d 534 (3d Cir.1977). To obtain an

The Supreme Court has chosen in *Grant,* reaffirmed by dicta in *Bellis,* to draw the line on the side of treating the one-man corporation as a corporation for all fifth amendment purposes. The time may have arrived to redraw the lines and discard this distinction, but that is a decision that the Supreme Court—not this Court—may make.

Were we writing on a clean slate, it might be argued that we should equate the one-man professional corporation with a sole proprietorship. But we are not writing on a clean slate; rather, the instruction from the Supreme Court which distinguishes between corporate business forms and sole proprietorships has been quite clear and explicit, and must necessarily encompass the one-man professional corporation. Under the majority's analysis, which would do away with the collective entity, or "corporate" rule, any corporate officer could claim a fifth amendment privilege when asked to authenticate corporate records. Thus, as the majority holds, a corporation may now "take the fifth." This is no less than a 180 degree turn from established doctrine.

I therefore respectfully dissent. I would affirm the contempt citation imposed by the district court.

order granting immunity pursuant to 18 U.S.C. § 6003, a United States attorney must certify that the witness "has refused or is likely to refuse to testify or provide other information on *the basis of his privilege against self-incrimination.*" 18 U.S.C. § 6003(b)(2) (emphasis added). Here, as I have explained, the Supreme Court has denied any such privilege to a corporation or its representatives. Thus, the very predicate for an immunity request under § 6003(b)(2) is lacking. In any event, the utility of granting immunity to a one-man corporation, where that "one-man" is subpoenaed to produce corporate documents, and where the record discloses no other corporate officials, is questionable.