DELAWARE VALLEY CITIZENS' COUNCIL FOR CLEAN AIR, et al., American Lung Association of Philadelphia, and Montgomery County, Delchester Lung Association, Sierra Club, Pennsylvania Chapter, Friends of the Earth of the Delaware Valley, Citizens' Committee For Environmental Control, Quinn, Kevin, Farrell, Kaysi, Weiss, Ruth G., Klinkner, John, Biez, Elizabeth S., Shulman, Mona

v.

COMMONWEALTH OF PA., & Train, Russell E., Ind. & as Administrator of the Environmental Protection Agency, et al., Sherlock, William T., Individually and as Secretary of the PA Dept. of Transportation, Goddard, Maurice K., Individually and as Secretary of the PA Dept. of Environmental Resources, Snyder, Daniel, J., III, Individually and as Regional Administrator of the Environmental Protection Agency, Region III.

UNITED STATES of America

v.

COMMONWEALTH OF PENNSYLVANIA; the Pennsylvania Department of Transportation and William T. Sherlock, Secretary of the Pennsylvania Department of Transportation; the Pennsylvania Department of Environmental Resources and Maurice K. Goddard, Secretary of the Pennsylvania Department of Environmental Resources.

Appeal of COMMONWEALTH OF PENNSYLVANIA, Secretary of the Pennsylvania Department of Transportation and Secretary of the Pennsylvania Department of Environmental Resources.

No. 82–1104.

United States Court of Appeals,
Third Circuit.

Argued May 13, 1982.

Decided May 21, 1982.

John M. Hrubovcak, Asst. Counsel, Ward T. Williams, Chief Counsel (argued), Dept. of Transp., Com. of Pa., Harrisburg, Pa., for appellants.

Jerome Balter (argued), Philadelphia, Pa., for appellees, Delaware Valley Citizens' for Clean Air, et al.

Carol E. Dinkins, Asst. Atty. Gen., Peter R. Steenland, Jr., Jacques B. Gelin, Stephen D. Ramsey, Maria A. Iizuka (argued), Attys., Dept. of Justice, Washington, D. C., for the U. S.

H. Lee Roussel, McNees, Wallace & Nurick, Harrisburg, Pa., for amici curiae Associated Pennsylvania Constructors, Pennsylvania Asphalt Pavement Ass'n, Greater Philadelphia Chamber of Commerce, Greater Pittsburgh Chamber of Commerce, City of Pittsburgh and Allegheny County.

* Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

Before GIBBONS and HUNTER, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

On August 29, 1978, a consent final judgment bound the Commonwealth of Pennsylvania to implement an inspection and maintenance program for automobile emission systems in the counties in the Pittsburgh and Philadelphia areas. Three years later, after the Commonwealth was found to be in violation of the decree, the state legislature enacted a bill prohibiting further funding for this program. The district court, 533 F.2d 869, on January 22, 1982, held the Commonwealth to be in civil contempt, and as a sanction to coerce compliance ordered the Secretary of the United States Department of Transportation to refrain from approving and awarding certain grants of federal highway funds to the Commonwealth. The Commonwealth appeals from the January 22, 1982 order. We affirm.

I.

This litigation has its origins in the requirements of the Clean Air Act of 1970, as amended, 42 U.S.C. § 7401 et seq. Pursuant to the Act, in April of 1973 the Pennsylvania Department of Environmental Resources (Penn DER) submitted a plan for meeting federal air quality standards for carbon monoxide and ozone levels in the metropolitan Philadelphia and southwestern Pennsylvania regions. As modified and promulgated by the United States Environmental Protection Agency (EPA) in November of that year, the plan included a provision requiring the implementation of a program for the inspection and maintenance of automobile emissions systems (I/M program) by May 1, 1975. 40 C.F.R. § 52.2038 (1981). The Commonwealth petitioned this

court for review of certain aspects of the plan, but did not seek review of the I/M program requirement. *See Commonwealth of Pennsylvania v. EPA*, 500 F.2d 246 (3d Cir. 1974).

When, by mid-1976, an I/M program had not been implemented, the Delaware Valley Citizens' Council for Clean Air (Delaware Valley) brought suit under 42 U.S.C. § 7604 against both the Commonwealth defendants and the EPA (the latter for failing to enforce the Commonwealth's obligation). The EPA also instituted an action of its own against the Commonwealth, pursuant to 42 U.S.C. § 7413(b). It was then dismissed as a defendant in the Delaware Valley suit, and both actions against Pennsylvania were consolidated.

On August 29, 1978, following prolonged discovery and negotiations, the Commonwealth and two of its departments, Penn DER and the Pennsylvania Department of Transportation (Penn DOT), agreed to a final consent judgment terminating both the Delaware Valley and the United States actions. The defendants agreed to implement an I/M program for ten counties in the Philadelphia and Pittsburgh areas by August 1, 1980.[1] The consent judgment provided that Penn DOT would first seek legislation instituting a franchise I/M system under which the Commonwealth would enter into contracts with garage owners for establishment of inspection stations. The judgment provided that should the legislature fail to effect such a system, Penn DOT would promulgate regulations providing for a private garage I/M system under which the Commonwealth would certify a number of privately owned facilities to perform the inspections. When the legislature did not enact a franchise system, Penn DOT issued final regulations authorizing the alternative system. 9 Pa.Bull. 4193 (Dec. 22, 1979).

On March 7, 1980, the district court approved a modification of the consent decree, agreed to by the parties, delaying implementation of the I/M program until May 1, 1981. The following year, the Commonwealth sought another delay. After failing to reach agreement with the plaintiffs for a second postponement, purportedly to permit the Commonwealth to require participating private garages to use a more sophisticated but still commercially unavailable type of testing equipment, the Commonwealth filed a motion in the district court on April 29, 1981, for a modification of the decree that would delay implementation until January 1, 1983. The next day, the date implementation was due under the once modified decree, Delaware Valley requested the district court to declare the Commonwealth in violation of the consent decree.

After requesting and receiving certain information from the EPA indicating the continuing unsatisfactory state of current air quality in the Philadelphia and Pittsburgh areas, the district court, on May 20, 1981, denied the Commonwealth's request for a modification of the decree, found the Commonwealth in violation, and ordered submission of a plan for immediate implementation of the I/M program. The Commonwealth submitted such a plan, and the court approved it with certain amendments suggested by Delaware Valley. On June 16, 1981, the judgment was modified in several respects including another extension of the deadline for implementation of the I/M program until May 1, 1982. On July 24, 1981, the district court denied a Commonwealth motion for reconsideration of the June 16 order. These district court orders were affirmed by this court on March 1, 1982.[2]

In the meantime, the state legislature had decided to take the matter into its own hands. Following the district court's decision in June of 1981, the Pennsylvania General Assembly passed House Bill No. 456, § 2 (H.B. 456), which prohibited the expenditure of state funds by the executive branch for the implementation of the I/M program. Although the Governor vetoed

---

1. Under the consent decree the Philadelphia area is comprised of Philadelphia, Bucks, Montgomery, Chester and Delaware Counties, while Allegheny, Beaver, Butler, Westmoreland and Washington Counties fall in the Pittsburgh area.

2. 674 F.2d 976 (3d Cir. 1982).

the bill, the legislature overrode the veto and enacted H.B. 456 into law. Act of October 5, 1981, No. 99, § 2, 1981 Pa.Legis. Serv. 312 (to be codified at Pa.Stat.Ann. tit. 71, § 523). Penn DOT and the executive branch immediately ceased all efforts toward implementing the I/M program, except for publication of final regulations pertaining to the standards for emission analyzers to be purchased by the private garage owners choosing to participate in the program. 11 Pa.Bull. 3519 (Oct. 10, 1981).

Following the enactment of H.B. 456, two motions were filed in the district court. The Commonwealth and Penn DOT requested a stay and a modification of the consent decree in view of their present alleged inability to comply with the decree's requirements despite the stated willingness of the executive branch to do so. Delaware Valley requested that the defendants be declared in civil contempt and that sanctions be imposed. The United States filed a brief taking the position that defendants' motion should be denied, but that the district court should postpone a ruling on the civil contempt motion and defer to the EPA for the initiation of administrative proceedings and remedies under the Clean Air Act.[3]

On January 22, 1982, the district court denied the defendants' motion for a stay, declared the Commonwealth and the Secretaries of Penn DOT and Penn DER to be in civil contempt, and as a sanction, ordered the Secretary of the United States Department of Transportation to refrain from approving any projects or awarding any grants under Title 23 of the United States Code for highways in areas in the Commonwealth covered by the consent decree, other than for purposes of safety, mass transit, or transportation projects related to air quality improvement or maintenance.[4] Defendants appealed and moved for a stay of the district court civil contempt order pending appeal. A stay was granted by this court on March 19, 1982,[5] and a petition by Delaware Valley for a rehearing en banc of that stay was denied on April 6, 1982.[6] One other legal maneuver worthy of note is the motion by two groups of Pennsylvania legislators to intervene as defendants. The district court denied their motion as untimely,[7] and this court affirmed that denial, holding, *inter alia*, that any of their interests were adequately represented by the Commonwealth defendants.[8]

## II.

The Commonwealth appellants contend that by virtue of the Pennsylvania Constitution they cannot be held in civil contempt. Article 3, Section 24 of that Constitution provides that "[n]o money shall be paid out of the treasury, except on appropriations made by law and on warrant issued by the proper officers; ..." Pennsylvania courts have interpreted this clause to mean that officials in the executive branch of state government may not expend funds (and thus may not be ordered to do so by a state court) specifically appropriated by the state legislature for one purpose to carry out another program. *Shapp v. Sloan*, 480 Pa. 449, 391 A.2d 595 (1978), *appeal dismissed sub nom. Thornburgh v. Casey*, 440 U.S. 942 (1979); *Ashbourne School v. Commonwealth Department of Education*, 43 Pa.Commw. Ct. 593, 403 A.2d 161 (1979).

Section 2 of H.B. 456 provides:

> pending the outcome of a public hearing and final action by the EPA Administrator. U. S. Brief at 23.

---

3. The EPA did in fact issue to the Commonwealth a notice of deficiency because of a lack of funding assurances required by sections 172(b)(7) and 110(a)(2)(F) of the Clean Air Act, 42 U.S.C. §§ 7502(b)(7), 7410(a)(2)(F). 46 Fed. Reg. 58593 (Dec. 2, 1981). It requested the Commonwealth to revise its implementation plan within 90 days or face a ban on construction and modification of major stationary sources of ozone and carbon monoxide. On March 5, 1982, the EPA also proposed to withhold Clean Air Act funds from Penn DOT and Penn DER totalling a little over $700,000. The EPA is presently deferring issuing these funds

4. 533 F.Supp. 869 (E.D.Pa.1982).

5. No. 82–1104 (3d Cir. March 19, 1982).

6. No. 82–1104 (3d Cir. April 6, 1982).

7. No. 76–2068 (E.D.Pa. March 25, 1981).

8. 674 F.2d 970 (3d Cir. 1982).

*Prohibition on Expenditures for Emission Inspection Program*

Neither the department [of Transportation] nor any other department or agency of the Executive Branch of State Government shall expend any public funds for the establishment and administration of any system for the periodic inspection of emissions or emission system of motor vehicles.

Act of October 5, 1981, No. 99, § 2, 1981 Pa.Legis.Serv. 312 (to be codified at Pa. Stat.Ann. tit. 71, § 523). Thus, appellants argue, members of the executive branch such as Penn DOT and Penn DER officials are powerless under state law to comply with the consent decree. Given this inability of the executive branch to comply, it is urged that the district court should not have held executive branch officials in contempt. And since, appellants urge, the state legislature is not a party to this action, it would be mistaken to hold the Commonwealth responsible for actions of the legislature.

These arguments disregard the fact that the Commonwealth itself was and remains bound by the consent decree. First Delaware Valley and then the United States brought suit both against the Commonwealth and against state executive branch officials. 533 F.Supp. 869 (E.D.Pa.). By its terms, "[t]he provisions of this Consent Decree apply to the Defendants Commonwealth of Pennsylvania, . . . and to each of the officers, agents, employees and successors of said parties." This court has previously noted that the Pennsylvania Department of Justice, members of which were signatories of this decree, has the exclusive power to compromise and settle lawsuits against the Commonwealth. *Vecchione v. Wohlgemuth*, 558 F.2d 150, 156 (3d Cir.), cert. denied, 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977). And in this case, we have also recently noted that the Attorney General, who heads the Department of Justice, has represented the Commonwealth in this litigation from the time the complaint was filed, through the negotiation and signing of the consent decree, and up to the present. 674 F.2d 970 (3d Cir. 1982) denying state legislators' motion for intervention since Commonwealth's interests already adequately represented by Commonwealth defendants).[9]

Neither can there be any objection to holding the Commonwealth to the terms of the decree based upon the eleventh amendment of the United States Constitution.[10] That amendment does not apply in suits brought by the United States against a state.[11] Moreover entry of a consent judgment is a waiver of any eleventh amendment immunity that the Commonwealth might have earlier wished to claim.[12]

Because the Commonwealth, including all its branches, is bound by the consent judgment, the argument of inability to comply rings hollow. Even if the executive branch

---

9. Further evidence that the Commonwealth defendants were authorized to enter into the consent decree, mentioned by the district court, is past and present legislation that authorizes Penn DOT to establish an I/M program. Very recently the Commonwealth Court of Pennsylvania interpreted this legislation as providing Penn DOT with continuing authority, if not the financial means, to establish, implement, and maintain an I/M program. *Burd v. Commw. of Pennsylvania*, —— Pa.Cmwlth. ——, 443 A.2d 1197 (1982). We do not suggest that such legislation is necessary before the Commonwealth defendants could enter into the consent decree. But it certainly provides evidence that there was no fundamental division between the executive and legislative branches at the time the decree was signed.

10. The eleventh amendment states:

   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
   U.S.Const. amend. XI.

11. *E.g., United States v. Mississippi*, 380 U.S. 128, 140–41, 85 S.Ct. 808, 814–15, 13 L.Ed.2d 717 (1965); *United States v. Commw. of Pennsylvania, Dept. of Highways*, 349 F.Supp. 1370, 1385–86 (E.D.Pa.1972).

12. *See Vecchione v. Wohlgemuth, supra*, 558 F.2d at 159.

defendants were physically[13] or legally[14] incapable of complying with the decree, those Commonwealth officials sitting in the General Assembly certainly are not incapable of insuring the Commonwealth's compliance. The sanction ordered by the district court does not single out the executive branch defendants in bringing pressure to obtain compliance. Thus those defendants cannot complain of any unfair burden upon them. Since the Commonwealth is able to comply with the consent decree, a declaration that it is in civil contempt cannot be reversed on grounds of impossibility of compliance.

### III.

■ The Commonwealth also urges that a concern for unjustified interference in state functions by the federal government should prevent a declaration of civil contempt in the circumstances of this case. The district court expressed hesitation about its own power "under our federalist system to countermand the decision of a state legislature not to expend state funds on the establishment of an I/M program" and even about Congressional power to require states to implement such a program.[15] The Commonwealth asserts that despite the district court's expressed concerns for our federal system, it has nevertheless applied pressure, albeit indirect, on the state legislature to expend funds. The Commonwealth relies on *New York State Association for Retarded Children, Inc. v. Carey*, 631 F.2d 162 (2d Cir. 1980), as authority for the proposition that a federal court may never coerce a state legislature. Although the opinion of the court in *Carey* expresses concern about federal courts attempting to direct state officials to raise and appropriate large sums of money, 631 F.2d at 165,

the consent judgment in that case in fact only required the Governor to seek financing "subject to any legislative approval that may be required." 631 F.2d at 163. As the concurring opinion in that case points out, the fact that the consent judgment was not violated was all that was necessary to reverse a declaration of contempt. 631 F.2d at 166–67 (Kearse, J., concurring). The consent judgment in this case is not explicitly subject to the condition found in the *Carey* judgment. There is no evidence that any of the parties who signed the decree intended such a condition, even implicitly. That, for example, the decree directs Penn DOT to use its best efforts to obtain legislation for a franchise system and, failing that, to implement a private garage system, in no way indicates that the Commonwealth is not bound to implement some I/M program.

For many of the same reasons that a finding of civil contempt was justified, the district court was also justified in refusing to grant defendants' third motion for modification of the judgment. The stringent requirements necessary for obtaining Fed. R.Civ.P. 60(b) relief from a judgment are not in the least satisfied here. *See Mayberry v. Maroney*, 529 F.2d 332, 335–56 (3d Cir. 1976). As the district court noted, the only changed circumstance cited by the Commonwealth is the enactment of H.B. 456, a matter within its control. A party bound by a judgment cannot rely, as a ground for relief under Rule 60(b), upon its own change of position.

### IV.

■ The Commonwealth advances several arguments predicated upon the Clean Air Act itself. Section 176 of the Act provides, in part:

---

**13.** There has been no showing that there are presently no funds physically reachable by Penn DOT and Penn DER for purposes of implementing an I/M program. Thus cases reversing a finding of civil contempt because the contemnor was physically unable to comply with a court order are not controlling. *See Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed.2d 476 (1948).

**14.** There is no necessity in this appeal to decide whether H.B. 456 is unconstitutional as a violation of either the supremacy clause, U.S.Const. art. IV, cl. 2, or the impairment of contracts clause, U.S.Const. art I, § 10, cl. 1.

**15.** For this latter doubt, the court cites *National League of Cities v. Usery*, 426 U.S. 833 (1976). *But see United Transportation Union v. LIRR*, —— U.S. ——, 102 S.Ct. 1349, 71 L.Ed.2d 549 (U.S.1982); *Kramer v. New Castle Area Transit Authority*, No. 81–2223 (3d Cir. April 30, 1982).

Limitations on certain Federal assistance

Approval of projects or award of grants

(a) The Administrator shall not approve any projects or award any grants authorized by this chapter and the Secretary of Transportation shall not approve any projects or award any grants under Title 23 other than for safety, mass transit, or transportation improvement projects related to air quality improvement or maintenance, in any air quality control region—

(1) in which any national primary ambient air quality standard has not been attained,

(2) where transportation control measures are necessary for the attainment of such standard, and

(3) where the Administrator finds after July 1, 1979, that the Governor has not submitted an implementation plan which considers each of the elements required by section 7502 of this title or that reasonable efforts toward submitting such an implementation plan are not being made (or, after July 1, 1982, in the case of an implementation plan revision required under section 7502 of this title to be submitted before July 1, 1982).

Implementation of approved or promulgated plans

(b) In any area in which the State or, as the case may be, the general purpose local government or governments or any regional agency designated by such general purpose local governments for such purpose, is not implementing any requirement of an approved or promulgated plan under section 7410 of this title, including any requirement for a revised implementation plan under this part, the Administrator shall not make any grants under this chapter.

42 U.S.C. § 7506 (Supp. II 1978).

The Commonwealth urges, first, that this section provides the exclusive remedy for state and local government violations of the act. It also urges that since the Commonwealth has already submitted an implementation plan, Section 7506(a)(3) makes a cutoff of Title 23 grants authorized in that subsection inapplicable. Cessation of "grants under this chapter" authorized in subsection 7506(b) (that is, of Clean Air Act grants only) is, according to the Commonwealth, the only available remedy. Finally, the Commonwealth argues that this section of the Act confers primary jurisdiction upon the EPA Administrator and the Secretary of Transportation to impose the specified sanctions only after those agencies have made the requisite findings.

Overlooked in all these arguments is the fact that there is an unappealed final consent judgment entered in 1978. Had the case against the defendants taken a fully litigated course, some of these arguments might have been raised and decided before a judgment became final and no longer reviewable. In 1978, however, the Commonwealth agreed to have a judgment entered requiring that it implement an I/M program. The sanctions imposed by the district court in 1982, the sanctions now before us for review, are sanctions for appellants' civil contempt in violating the consent decree. The district court made quite clear that it was not imposing sanctions on the authority of the Clean Air Act. Arguments regarding that Act's requirements are thus entirely beside the point.

V.

While holding the Commonwealth defendants to be in contempt, the district court declined to declare H.B. 456 unconstitutional and declined to countermand in any direct manner the state legislature's decision not to expend funds on the establishment of an I/M program. Seeking some other sanction designed either to coerce the contumacious party into compliance or to compensate the aggrieved party for loss,[16] the court concluded that Section 176(a) of

---

**16.** *See Latrobe Steel Co. v. United Steelworkers of America*, AFL–CIO, 545 F.2d 1336, 1344 (3d Cir. 1976).

the Clean Air Act suggested an appropriate sanction, in that Pennsylvania's adoption of H.B. 456, in a practical sense, left matters as if the Commonwealth had never submitted the required implementation plan revisions. The court therefore ordered the Secretary of Transportation [17] to refrain from approving any projects or awarding any grants of federal highway funds under Title 23 for the ten counties subject to the consent decree except for safety, mass transit, or transportation improvement projects related to air quality improvement or maintenance in those counties.[18]

■ Civil contempt proceedings against state officers may justifiably result in the fining or even the conditional jailing of those officials.[19] Whether such action might have been warranted against either state legislative or executive branch officers in the circumstances of this case is an issue not presently before this court, since the district court chose a less direct form of coercion. The standard for our review of a district court sanction for civil contempt is whether the district court abused its wide discretion in fashioning a remedy. *E.g.,* *United States v. Powers,* 629 F.2d 619, 624 (9th Cir. 1980); *Vuitton et Fils S. A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir. 1979).

■ The Commonwealth, relying on *Gautreaux v. Romney,* 457 F.2d 124 (7th Cir. 1972), urges that there was such an abuse. In *Gautreaux* the court overruled a district court remedy that ordered the United States Secretary of Housing and Urban Development to withhold Model Cities Program money from the City of Chicago in order to force compliance with a separate housing desegregation program. The court pointed out that the Model Cities Program itself had not been found to be tainted with racial discrimination and that the order would harm intended beneficiaries of the Model Cities Program. *Id.* at 126–27. *Gautreaux* is not relevant, since it involved not the appropriateness of a coercive sanction to compel compliance with an incontestably valid final injunction, but the scope of injunctive relief in the first instance. Moreover, Congress has itself suggested the relationship between a failure to implement programs required by the Clean Air Act and a cut-off of Title 23 funds in 42 U.S.C. § 7506(a). Such a cut-off serves both to induce implementation of the I/M program and to inhibit highway building, which itself contributes to the problems which the Clean Air Act is designed to remedy. Any harm resulting to the citizens of Pennsylva-

---

17. There is no barrier to such an order against the Secretary of Transportation. Although the Secretary is not himself a party, his employer, the United States, is. We have previously held, in any event, that injunctive relief against nonparties may be appropriate if necessary to afford full relief. *Pittsburgh-Des Moines Steel Co. v. United Steelworkers of America, AFL–CIO,* 633 F.2d 302, 307 (3d Cir. 1980).

18. To insure compliance, the district court added the following conditions before any approval or award may become final in the context of the listed exceptions:

(i) The Secretary, or his designee, *shall certify,* in writing, that the project approved or grant awarded is for safety, mass transit, or transportation improvement projects related to air quality improvement or maintenance in the Philadelphia or Pittsburgh Areas, as those areas are defined in ¶ 2(c)(vi) below;

(ii) The certificate required by ¶ 2(c)(i) above *shall specify* which of the excepted purposes are expected to be served by approval of the grant or award of the project;

(iii) The certificate required by ¶ 2(c)(i) above *shall contain* a brief statement of the factual grounds for the approval of the project or award of the grant and how said approval of the project or award of the grant is expected to serve the purpose or purposes set forth in the certification under ¶ 2(c)(ii) above;

(iv) The original copy of the certificate required under ¶ 2(c)(i) above shall be *filed* with the Court and copies *served* upon all counsel;

(v) The Secretary's approval of any project or award of any grant under the exception provided in ¶ 2(b) above shall become final *thirty (30) days* after the certificate required by ¶ 2(c)(i) above is filed and served, *unless,* within that time, the Court issues an Order staying the approval of award. [emphasis in original]

19. *Hutto v. Finney,* 437 U.S. 678, 690–91, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978); *Vecchione v. Wohlgemuth, supra,* 558 F.2d at 158.

nia from a lack of federal highway funds can easily be brought to an end by actions of their elected representatives in the state legislature.

## VI.

The order of the district court declaring Commonwealth defendants to be in contempt of the consent final judgment, and enjoining the United States Secretary of Transportation from approving certain projects or awarding certain funds until the Commonwealth is in compliance, will be affirmed in all respects.