In the Matter of the GRAND JURY EMPANELLED MARCH 17, 1987.

No. 87–5396.

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 1987.

Decided Dec. 29, 1987.

As Amended Jan. 21, 1988.

Russell M. Gioiella (argued), Litman, Asche, Lupkin & Gioiella, New York City, for appellant Corporations.

James Resti (argued), Borakove & Resti, New York City, for appellant Officer.

Samuel A. Alito, Jr. (argued), U.S. Atty., Lorraine S. Gerson, Asst. U.S. Atty., Newark, N.J., for appellee.

Before SEITZ, GREENBERG and ROSENN, Circuit Judges.

### OPINION OF THE COURT

SEITZ, Circuit Judge:

Appellants are three closely related corporations ("the corporations") and an officer of the corporations ("the officer"). They appeal an order of the district court holding them in civil contempt and imposing fines for refusing to produce certain documents for a grand jury investigating their activities. This court has jurisdiction under 28 U.S.C. § 1291 (1982). *See United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971).

I.

In May, 1985, upon returning from a business trip abroad, the officer was detained at Kennedy Airport by agents of the United States Customs Service. The agents searched him and seized documents he had in his possession. After reviewing the documents and copying some, but not all, of them, the agents returned the documents to the officer the next day.

The officer subsequently conferred with counsel, who advised that the search and seizure at the airport were of dubious legality. Counsel recommended that the officer turn over to him the documents that the Customs Service agents had seized, so as to facilitate a suppression motion in the

event of a future criminal prosecution implicating the documents. The officer turned over the documents to counsel, who currently retains them on behalf of the officer. Both the government and the appellants refer to these documents as the "airport documents."

The grand jury issued a subpoena to one of the corporations in June, 1985, and a second subpoena to another of the corporations in March, 1986. The two subpoenas are substantially identical; both request production of various categories of corporate documents. Neither subpoena is directed to any particular officer or employee of the corporations. The earlier subpoena is directed to the corporation itself, and the latter is directed to "any responsible officer."

The corporations produced numerous documents in response to the subpoenas but expressly withheld responsive airport documents. The government represents that the corporations subsequently produced altered copies of some of the airport documents, and the scope of the grand jury investigation has been expanded to cover possible obstruction of justice by the corporations and their officers in fabricating and destroying documentary evidence, apparently including some of the airport documents.

The government moved to compel production of those airport documents falling within the scope of the subpoena. After a hearing, the district court entered an order requiring the corporations to comply in full with the outstanding subpoenas. The corporations moved for a stay of that order pending appeal. At a second hearing, the district court denied the stay. The corporations then stipulated that they would not comply with the order because the officer refused to relinquish possession of the airport documents to the corporations. The stated ground for this refusal was the officer's belief that his act of turning over the

documents to the corporations would be self-incriminating. Faced with this stipulation, the court granted the officer's application to intervene in the proceedings *nunc pro tunc*. The court then issued an order holding the corporations *and* the officer in contempt for failure to comply with the enforcement order, levying separate fines against each. Accrual of the fines was stayed pending this appeal.

## II.

We first consider the propriety of the contempt order as to the corporations. On appeal, the corporations argue, as they did before the district court, that they may not properly be held in contempt because it is impossible for them to comply with the enforcement order. Our standard of review is plenary because the district court determined that the corporations' undisputed factual showing was insufficient as a matter of law to absolve them from their duty to produce the requested documents.

The district court's enforcement order, like the underlying subpoenas, requires the corporations to produce only corporate documents and not the personal papers of the officer. Moreover, the order permits any employee or agent of the corporations to physically convey the documents to the grand jury.[1] It is firmly established that a corporation has no fifth amendment privilege against compelled production of corporate documents. *In re Grand Jury Matter (James Gilbert Brown) ("Brown")*, 768 F.2d 525, 528 (3d Cir.1985) (in banc). Neither the content of corporate records nor the corporation's "act of production" is protected by the privilege.

A corporation may, however, be relieved of its duty to comply with an enforcement order if it can establish that compliance is impossible. *See United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983). This court has held

[1]. In this respect, the subpoenas and order differ from those we have considered in earlier cases. *See In re Special Federal Grand Jury Empanelled October 31, 1985*, 819 F.2d 56 (3d Cir.1987) (subpoena and order requiring specific individual to produce documents as representative of corporation); *In re Grand Jury Empanelled March 23, 1983*, 773 F.2d 45 (3d Cir.1985) (same); *In re Grand Jury Matter (James Gilbert Brown)*, 768 F.2d 525 (3d Cir.1985) (in banc) (same).

that to establish impossibility of compliance a corporation must prove the non-existence of the requested records or "other recognized bases for unavailability." *United States v. Rogers Transp., Inc.*, 793 F.2d 557, 558 (3d Cir.1986).

In this case the corporations recognize that they have no fifth amendment privilege against production of the requested documents. Rather, they claim that production is impossible because the officer, citing his *personal* fifth amendment privilege, refuses to relinquish possession of the documents to the corporations on the ground that such relinquishment would amount to compelled self-incrimination on his part. Under these circumstances, the corporations argue, the officer's refusal to return the documents constitutes one of the "other recognized bases for unavailability" that we alluded to in *Rogers Transportation.*

■ To resolve this issue we need not address the merits of the officer's fifth amendment claim. We hold that, regardless of the validity of this claim, the corporations are not excused from their duty to produce the documents covered by the district court's enforcement order. Accordingly, the district court did not err in holding the corporations in contempt for failure to comply with the order.

Any other determination would severely undermine the principle that a corporation itself has no fifth amendment privilege. A corporation, of course, can conduct its affairs only through its employees. In most instances, when a corporation comes under suspicion of criminal wrongdoing, certain of its employees come under suspicion as well. It would surely not be difficult for a corporation, in anticipation of an order for production of corporate records, to ensure that those records are placed in the possession of an employee who could subsequently refuse to relinquish them on the basis of his personal fifth amendment privilege. The approach proposed by the appellant corporations would invite corporations to

manipulate events so as to effectively eliminate the finely drawn distinction in fifth amendment jurisprudence between the treatment of individuals and the treatment of corporations.[2]

The facts of the present case amply illustrate the ease with which such manipulation could be accomplished. The documents seized from the officer at Kennedy Airport were corporate documents. The attorney with whom the officer later consulted acted at that time as counsel to the corporations. At the first hearing before the district court, the attorney initially stated that he was appearing on behalf of both the officer and the corporations. In response to the district court's observation that there was a potential conflict of interest between the officer and the corporations, the attorney stated, presumably with authorization from the corporations, that he would appear solely on behalf of the officer, leaving representation of the corporations to another attorney from a different firm. With this simple expedient, constructive possession of the airport documents passed from the corporations to the officer. We do not believe that this "transfer" of possession should permit the corporations to escape from their duty to produce these documents. "Legal process is not so readily nullified." *Id.* Thus, the corporations' argument lacks merit.

### III.

We now consider the contempt order as to the officer. Here our standard of review is whether the district court abused its discretion in imposing the contempt sanction. *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 678 F.2d 470, 478 (3d Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982).

An individual may not be placed at risk of contempt unless he has been given specific notice of the norm with which his conduct must comply. *Inmates of Alleghe-*

---

**2.** The potential for manipulation is especially great when a closely held corporation is under investigation, because the individuals who con-

trol corporate decisionmaking are likely to be under investigation as well.

*ny County Jail v. Wecht,* 754 F.2d 120, 129 (3d Cir.1985). Although this requirement is grounded in notions of due process, it also serves an important practical purpose: notice to the individual is necessary to allow a reviewing court to assess the propriety of the contempt sanction. If a contempt order is not preceded by a specific directive to the alleged contemnor, the reviewing court cannot determine the factual basis for imposition of the sanction.

The subpoenas in this case make no mention of the officer. At the hearing on the motion to compel, counsel for the government emphasized that the government was not seeking any order directed to the officer. The enforcement order did not refer to the officer; it permitted the corporations to produce the subpoenaed documents through any agent or agents designated by the corporations. Nevertheless, at the second hearing before the district court, the officer appears to have actively sought to be held in contempt so he would have standing to assert his personal fifth amendment claims before this court.

■ Under these circumstances, we believe that the district court abused its discretion by holding the officer in contempt in the absence of an enforcement order specifically directed to the officer. In light of the officer's invitation of the contempt sanction, the district court's action does not raise due process concerns, but it does implicate the practical purpose underlying the requirement of notice to the alleged contemnor. There is nothing in the record to indicate precisely why the officer was held in contempt. The officer suggests that the contempt order was based on an "implied enforcement order" requiring the officer to relinquish the airport documents to the corporations. We decline to infer the existence of such an order. The fifth amendment rights of an individual resisting production of documents often turn on subtleties in the wording of the subpoena and enforcement order, *see, e.g., Brown,* 768 F.2d at 531 (Becker, J., concurring), and we cannot evaluate the officer's fifth amendment claims on the basis of speculation as

to the nature of an "implied" enforcement order.

## IV.

Accordingly, we will affirm the district court's contempt order as to the appellant corporations and reverse the order as to the appellant officer.