In re THREE GRAND JURY
SUBPOENAS, DATED
JANUARY 5, 1988.

Richard ROE, ABC Corporation and
DEF L.P., Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 930, 931, Docket 88–6021, 88–6023.

United States Court of Appeals,
Second Circuit.

Argued March 4, 1988.

Decided May 25, 1988.

Robert L. Krakower, Roseland, N.J. (Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., Theodore V. Wells, Jr., of counsel), for appellant Richard Roe.

Robert Kasanof, New York City (Robert Kasanof, Attorneys, New York City, Linda Cantoni, of counsel), for appellants ABC Corp. and DEF L.P.

Jess Fardella, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., for the S.D.N.Y., Celia Goldwag Barenholtz, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before OAKES and NEWMAN, Circuit Judges, and CEDARBAUM, District Judge.*

CEDARBAUM, District Judge:

These are appeals from orders of the United States District Court for the South-ern District of New York, Robert L. Carter, *Judge,* adjudicating an individual and two related businesses in contempt for failure to turn over to him for *in camera* inspection a cassette tape-recording of a telephone conversation. The tape recording had been the object of a grand jury subpoena *duces tecum.* For the reasons discussed below, we affirm as to the individual and remand as to the business entities.

## BACKGROUND

Appellants ABC Corp. and DEF, L.P., a limited partnership ("the entities"), are engaged in the business of securities trading and other investment activities. The entities are related, and apparently share a common office. Appellant Richard Roe is a principal of ABC and a general partner of DEF. Appellants are referred to by pseudonyms in this opinion in order to preserve the secrecy of the grand jury proceedings.

On December 17, 1987, federal agents executed a warrant authorizing a search for certain documents and records at the office of the entities. While on the premises, one agent discovered a cassette tape recording. On its label was written either the initials or part of the name of another securities firm with which the entities do substantial business ("the securities firm"). The agent listened to part of the cassette, on which a telephone conversation was recorded. Since he had heard Roe's voice during the course of the search, the agent was able to identify Roe as one of the two parties to the conversation. The other party was referred to only by a nickname, but is believed by the Government to be a principal of the securities firm.

The agents did not take the cassette with them after executing the search warrant. Instead, ABC, DEF and Roe were each served with identical subpoenas *duces tecum* dated January 5, 1988, directing them to deliver the cassette tape or to appear

---

* Hon. Miriam Goldman Cedarbaum of the United States District Court for the Southern District of New York, sitting by designation.

with it before a Southern District grand jury the following day.[1]

The entities and Roe refused to comply with the subpoena. On January 21, 1988, the Government moved in Part I of the district court to compel production of the cassette. Judge Carter, who was then sitting in Part I, heard argument on January 21 and 22.

The entities took the position that since they did not then possess the cassette and never had possessed it, they were unable to comply with the subpoena. The entities represented and offered to prove that they do not maintain as part of their business a cassette tape recording system, and never had. They also represented that the only recordings made by them in the course of business are large reel-to-reel tapes of activities in their trading room.

Roe took the position that the Fifth Amendment privilege against self-incrimination protected him from having to produce the cassette. He argued that his act of production in compliance with the subpoena would be incriminating in that it would establish the continued existence of the tape, would authenticate it, and would establish that Roe's own voice was recorded on it. He further asserted that the tape was personal, and not a business record, and that therefore its contents should also be privileged.

The Government argued that the cassette was a business record of the entities which they were obliged to produce since they have no Fifth Amendment privilege. As to Roe's claim of privilege, the Government argued that since the cassette was a business record, its contents were not entitled to Fifth Amendment protection. Even if the cassette were Roe's personal record and not a record of the entities, the Government contended that its contents would not be protected. Furthermore, there could be no privilege as to the act of production of the cassette because Roe's act of produc-

tion could not provide the Government with any incriminating information about Roe that it did not already possess.

During the course of the argument, the Government asked Judge Carter to review the cassette in order to determine whether it was a business record of the entities, in which case, the Government argued, no party would enjoy any Fifth Amendment privilege. The judge directed that the cassette be turned over to him for this determination. Roe refused even to produce the cassette to the Court for *in camera* inspection unless the Government gave him use immunity. Judge Carter agreed to postpone his order for one day so that the parties could provide further authority on the question. The Government, in a letter submitted to the Court later that day, took the position that in order to avoid any Fifth Amendment problems as to Roe, the entities should be compelled to turn over the cassette to the Court for an *in camera* determination of whether it was their business record. However, in a footnote, the Government asserted that even production by Roe could not be incriminating:

> Any *in camera* submissions by him to the Court raise no Fifth Amendment dangers. *See In re Sealed Case*, 832 F.2d 1268, 1281 (D.C.Cir.1987) ("it seems clear that any submissions that the Witness makes in challenging the [Government] may not be used against him at trial, either as part of the Government's case-in-chief or for purposes of impeachment."). *But cf. In re Grand Jury Proceedings*, 506, [sic] F.Supp. 395, 396 (S.D.N.Y.1981).

J.A. 66–67.

On the following day, Judge Carter announced that the representations made by the Government were sufficient for a *prima facie* showing that the cassette still existed and that it had been found on the premises of the entities. J.A. 43–44. Roe's attorney asked that the agent who had found and listened to the cassette dur-

---

1. The subpoena required the production of: [o]ne cassette tape recording with a label bearing the inscription either [initials or first proper name of the securities firm] and other writing crossed out and containing a conver-

sation between two males, one of whom is referred to as [a nickname] and the otehr [sic] of whom is apparently [Richard Roe]. Sealed Joint Appendix ("J.A.") at 9, 11.

ing the December 17 search be called to testify, in order to establish that the cassette was contained in a private place in the entities' office and not in the place of corporate records, and that it included conversations concerning people's children as well as securities transactions. J.A. 47–48.

Judge Carter indicated that the only issue as to Roe was whether he had an act of production privilege with regard to the tape. J.A. 48. The judge expressed some doubt about the Government's assertion, stated this time in open court, that production to the Court for *in camera* review could never be used to incriminate a defendant and thus could not be the basis for invocation of Fifth Amendment privilege. J.A. 50. Judge Carter went on to find, however, that Roe had made no *prima facie* showing that production to the Court could be incriminating. *Id.*

In open court, the judge then orally ordered DEF[2] "and/or" Roe

> to produce the tape and to produce the tape to the [C]ourt; if they are asserting a Fifth Amendment privilege on what is on the tape, to present the tape to the custody of the [C]ourt for its examination, and that order is effective immediately.

J.A. 51.

The entities claimed that the cassette had never been in their possession, and requested that Roe turn it over to them. J.A. 51–52. Roe asserted his Fifth Amendment privilege and refused to produce the tape. J.A. 52–53. The parties then waived further notice and a hearing, and agreed upon the language of two orders. The orders adjudicated Roe and the entities in contempt for failing to turn over the tape to the Court for *in camera* inspection, and stayed the determination and imposition of sanctions pending the outcome of an expedited appeal. J.A. 58–60. The orders did not state whether Roe and the entities were in civil or criminal contempt, and did not state what sanctions were contem-

plated. These expedited appeals were then taken.

## DISCUSSION

### A. *Appellate Jurisdiction*

■ First, we consider the question of our jurisdiction over this appeal. Although Roe and the entities were adjudged in contempt of court, not only was the imposition of sanctions stayed, but no sanctions were formulated prior to entry of the stay. There is language in some older Supreme Court cases suggesting that sanctions must be imposed in order to create appellate jurisdiction. *See Cobbledick v. United States*, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940) (witness wishing to resist grand jury subpoena may not appeal "until the witness chooses to disobey and is *committed* for contempt") (emphasis added); *Alexander v. United States*, 201 U.S. 117, 121, 26 S.Ct. 356, 358, 50 L.Ed. 686 (1906) (production order "may coerce a witness, leaving to him no alternative but to obey or be punished ... but from such a ruling it will not be contended there is an appeal. Let the court go farther, and *punish* the witness for contempt of its order,— then arrives a right of review....") (emphasis added).

However, in *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed. 2d 85 (1971), the rule of *Cobbledick* and *Alexander* was said to be that the recalcitrant witness must face a choice between compliance with the production order and "resistance to that order with the concomitant *possibility* of an adjudication of contempt if his claims are rejected on appeal." (emphasis added). The language of *Ryan* was repeated in *United States v. Nixon*, 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974). The *Nixon* Court's subsequent discussion, in which it held that "the traditional contempt avenue to immediate appeal [was] peculiarly inappropriate" in a case involving the President, 418 U.S. at 691, 94 S.Ct. at 3099, stressed the awkwardness of a federal judge having to

---

**2.** It is clear from the context that the order was meant to apply to ABC as well as to DEF. The later order citing the entities for contempt, which was drafted by the attorneys for the entities together with the Government, named both ABC and DEF.

"*issu[e] a citation* to a President simply in order to invoke review," *id.* at 692, 94 S.Ct. at 3099 (emphasis added). This language strongly implies that the general rule is that only a citation for contempt, not the imposition of sanctions, is necessary for appellate review. *See In re Grand Jury Subpoena Dated Jan. 30, 1986 to Bronx Democratic Party,* 784 F.2d 116, 118 (2d Cir.1986) (*adjudication* of contempt required to allow appeal of denial of motion to quash subpoena); *see also National Super Spuds, Inc. v. New York Mercantile Exchange,* 591 F.2d 174, 180 (2d Cir.1979) (Friendly, J.) (citation alone suffices to allow review of production order addressed to government employee who seeks to invoke governmental privilege at his agency's request).

■ We have concluded that we have jurisdiction to entertain this appeal. But we note that there may be advantages to imposing specific sanctions prior to appeal, even if the sanctions are promptly stayed either by the district court or the court of appeals. The contemnor may feel more pressure to comply with the order of the court if the reality of the penalty he faces for non-compliance is brought home to him in concrete form by having sanctions imposed. He may be more likely to decide that the situation is grave enough to warrant immediate compliance with the judge's order, rather than requesting a stay and pursuing the question on appeal, if the ultimate penalty looms as more than just a set of possibilities outlined to him by his lawyer. In addition, the imposition of sanctions serves the important function of informing the reviewing court whether the contempt is civil or criminal. In general, if the sanction is jail or daily fines until compliance, the contempt is civil; if it is a flat penalty, the contempt is criminal. *See Hicks on behalf of Feiock v. Feiock,* — U.S. —, 108 S.Ct. 1423, 1429–32, 99 L.Ed.2d 721 (1988). The civil-criminal distinction may affect substantial rights, although it does not in this case. *See In re Grand Jury Witness,* 835 F.2d 437, 441 (2d Cir.1987); *S.E.C. v. American Board of Trade, Inc.,* 830 F.2d 431, 441 (2d Cir.1987), *cert. denied,* —

U.S. —, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988).

## B. *Richard Roe*

■ Roe was held in contempt, not for refusing to produce the cassette to the grand jury, but for refusing to produce it to the district judge for *in camera* inspection. This refusal was unjustified.

Roe sought to avoid producing the cassette to the grand jury by invoking his Fifth Amendment privilege against self-incrimination. The district judge had not yet decided whether the privilege applied. It was in order to assess Roe's claim of privilege, as well as the entities' claim that they should not have to comply with the subpoena because the cassette did not belong to them, that Judge Carter wished to listen to the cassette *in camera.*

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that testimony presented in support of a motion to suppress evidence on Fourth Amendment grounds may not subsequently be used against a defendant at trial, since it is "intolerable that one constitutional right should have to be surrendered in order to assert another." 390 U.S. at 394, 88 S.Ct. at 976. This same principle applies to production in support of a claim of the Fifth Amendment privilege against self-incrimination. *See In re Sealed Case,* 832 F.2d 1268, 1281 (D.C.Cir.1987); *see also In re Katz,* 623 F.2d 122, 127 (2d Cir.1980) (*in camera* "proceeding itself should be privileged so that whatever testimony is elicited will not constitute a waiver of any right the witness might have"). The Government conceded, both in its letter to Judge Carter and in open court, J.A. 50, that Roe's act of producing the tape for *in camera* inspection could not be used against him at trial.

■ Proper invocation of the Fifth Amendment privilege against self-incrimination requires a showing of all of the following three elements: compulsion, a testimonial communication and the incriminating nature of that communication. *See In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987,* 834 F.2d 1128, 1131

(2d Cir.1987). Because production of the cassette for *in camera* examination could not have been used against Roe at trial, it could not have been incriminating. *Cf. Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (where danger of incrimination removed through grant of use and derivative use immunity, testimony may be compelled). Therefore, Roe's argument that compelling him to produce the cassette to the Court would violate his Fifth Amendment privilege because of the potentially incriminating nature of the act of production must fail. Roe has not argued that production to the Court would violate his claimed privilege as to the contents of the cassette, since those contents would not be made available to the Government during the *in camera* review.

Despite Roe's objections to the contrary, we are not granting the "constructive use immunity" which the Supreme Court prohibited in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). In *Doe*, the Supreme Court held that even where the Government represents that it will not use the act of production against the producer in any way, immunity may be granted only upon a formal request to the court in accordance with the procedure prescribed by 18 U.S.C. § 6003. 465 U.S. at 614–17. This is not a case like *Doe*, in which the Government made an informal offer of immunity which it asked the court to enforce. The Government has not promised Roe immunity in any form. The Government has simply conceded that the law prohibits use of Roe's act of production to the Court against him. Thus, we are not granting immunity in this case, but are simply following the clear rule laid down in *Simmons* that evidence produced in support of a claim of a constitutional right or privilege may not be admitted at a criminal trial against the person who produced it.

Equally unavailing is Roe's argument that he may not be held in contempt for failing to turn over the cassette to the entities without a determination by the district court that the cassette belonged to the entities and not to him. Judge Carter ordered Roe to turn over the cassette to the Court, not to the entities. J.A. 51. It was

for failing to turn over the cassette to the Court that Roe was held in contempt. J.A. 5, 59. Although the entities asked Roe to give them the cassette, the request was made only as part of their effort to comply with Judge Carter's order that they produce the cassette for *in camera* examination by the Court. There was no court order that Roe provide the cassette to the entities.

## C. *The Entities*

■ The entities do not object to the production order on the basis of the Fifth Amendment privilege against self-incrimination, since as collective organizations they are not protected by this privilege. *See Bellis v. United States*, 417 U.S. 85, 90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974); *U.S. Securities & Exchange Commission v. First Jersey Securities, Inc.*, 843 F.2d 74, 76 (2d Cir.1988) (corporation); *Securities and Exchange Commission v. Kingsley*, 510 F.Supp. 561, 563 (D.D.C. 1981) (limited partnership). Instead, they argue that they neither possess nor control the cassette, and therefore cannot comply with the Court's order that it be produced.

Impossibility of compliance with a court's production order is a defense to a citation for contempt. *See United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552–53, 75 L.Ed.2d 521 (1983); *United States v. Barth*, 745 F.2d 184, 187 (2d Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985); *see generally Badgley v. Santacroce*, 800 F.2d 33, 36–37 (2d Cir.1986), *cert. denied*, ⸺ U.S. ⸺, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). However, a corporation or partnership may be required to produce its business records even if the records are in the hands of an officer or principal who refuses to turn them over to it. *Matter of Grand Jury Empanelled March 17, 1987*, 836 F.2d 150 (3d Cir.1987). Otherwise, when the possibility of a subpoena loomed, a business with no Fifth Amendment privilege could avoid the obligation to produce its records simply by entrusting them to an employee or partner who could invoke his own production privilege and refuse to relinquish them. *See id.*

at 152. But this rule presupposes a finding that the records are in fact business records that belong to the business, as they were in *Matter of Grand Jury Empanelled March 17, 1987, supra,* and not personal records of the principal who possesses them. No doubt the contents of the tape, which Roe was properly ordered to produce for *in camera* inspection, will assist the district judge in determining whether the tape is property of Roe or the entities, but the duty to produce the tape, even for this limited purpose, may not be imposed on the entities until the judge has determined, at least preliminarily, that it is their property. Were this not the case, the Government could obtain any personal document of any principal of a corporation or partnership merely by subpoenaing it from the business entity, upon penalty of contempt. Principals of such entities would thereby lose the Fifth Amendment privilege.

Thus, the entities should not have been required to turn over the cassette and subsequently held in contempt without a preliminary finding by the district court that the cassette was a business record belonging to them. Since this was a contested proceeding, this preliminary finding should have been explicit. *See United States v. Barth,* 745 F.2d at 187 (in contested proceeding to enforce I.R.S. summons directed at individual, court must explicitly determine that individual possesses summoned documents).

In this case, Judge Carter seems to have placed great weight on the Government's uncontested offer of proof that the cassette had been found on the premises of the entities. *See, e.g.,* J.A. 44. In addition, the Government asserted that the cassette contained a conversation about financial and securities investment matters between a principal of the entities and a principal of the securities firm. J.A. 18–19. But the entities' offer to prove that they did not make cassette recordings as part of their business, J.A. 42, was apparently not considered. On this record, it is difficult to tell whether the district judge made an "implicit" finding, *cf. United States v. Ry-*

*lander,* 460 U.S. at 761 n. 3, 103 S.Ct. at 1554 n. 3, that the tape was an entity record. In any event, he did not explicitly address the question.

 That the cassette was found on the business premises of the entities is not sufficient to establish that it is their property. In *Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States,* 657 F.2d 5, 8 (2d Cir.1981), this Court enumerated some of the factors that are relevant in determining whether a document found in a business office is a personal or a business record:

> who prepared the document, the nature of its contents, its purpose or use, who maintained possession and who had access to it, whether the corporation required its preparation, and whether its existence was necessary to the conduct of the corporation's business.

The entities' offer to prove that they did not make such cassette tapes as part of their business is relevant to several of these factors. On remand, the entities should be given an opportunity to show that the cassette does not belong to them. The stay as to the entities should be continued until the district court makes an explicit preliminary determination as to the ownership of the tape. If the district judge determines that the tape is a record of the entities, he should vacate the stay and impose the penalty for contempt. If he finds otherwise, he should vacate the contempt order.

## CONCLUSION

The order adjudging Roe in contempt is affirmed. The order adjudging the entities in contempt is remanded for further proceedings in accordance with this opinion.